**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| ABDERRAHIM ASSINA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLACKLANE NORTH AMERICA INC.,<br><br>Defendant. | No. 1:24-cv-12580<br><br>JURY DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Abderrahim Assina, on behalf of himself and all others similarly situated, brings this class action against Defendant Blacklane North America Inc. ("Blacklane") for violations of Massachusetts law.

## INTRODUCTION

1. Plaintiff and other Class Members are limousine drivers who provide services to Blacklane's customers in Massachusetts.

2. Blacklane misclassifies Plaintiff and other Class Members as independent contractors even though they are employees under Massachusetts law.

3. By misclassifying Plaintiff and other Class Members as independent contractors, Blacklane has unlawfully avoided paying hourly wages, overtime wages, business expenses, and other benefits in violation Massachusetts law.

4. Blacklane has also violated Massachusetts law by withholding gratuities from Plaintiff and other Class Members and by imposing monetary penalties on Plaintiff and Class Members in the form of unlawful deductions from their wages.

1

## PARTIES

5. Plaintiff Abderrahim Assina is an individual residing in Lynn, Massachusetts.

6. Plaintiff has worked as a limousine driver for Blacklane since October 2015.

7. Defendant Blacklane North America Inc. is a foreign corporation with its principal place of business at 111 Town Square Place, Suite 1203, Jersey City, New Jersey 07310.

8. At all material times, Blacklane actively and continuously conducted and advertised its business in Massachusetts.

## JURISDICTION AND VENUE

9. Jurisdiction is proper under 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 and is between citizens of different States.

10. Venue in proper under 28 U.S.C. § 1391(b)(2) because many of the events underlying this action occurred in this judicial district.

## FACTS

11. Blacklane is a transportation company that provides limousine services across the United States, including in Massachusetts.

12. Customers can order limousine services through Blacklane's mobile phone application and website, https://www.blacklane.com.

13. Blacklane advertises its business as a "Chauffeur Service," including on the Apple App Store.

14. According to its website, "Blacklane's limousine service fleet can be tailored to fit a variety of needs: our regular Business Class vehicle can be used for either as a simple A-to-

B journey or hired by the hour for maximum flexibility on the part of the passenger." *See* https://www.blacklane.com/en/limousine-service/ (last visited Sept. 3, 2024).

15. On its Instagram page, Blacklane posts the tagline, "You thrive. We'll drive."

16. Drivers who want to work for Blacklane must apply through Blacklane's "Onboarding Portal."

17. All drivers must complete Blacklane's mandatory training program before providing services to customers.

18. Blacklane's training modules cover topics such as "Chauffeur Values – Prioritize Safety" and "Reviewing Rides and Waiting Time Policy."

19. Each Blacklane training module requires the driver to watch a video and take a test about the module's content.

20. The driver must pass the test to access the next training model.

21. Drivers must complete all training modules before Blacklane will offer them work assignments.

22. Blacklane's driver training programs continue past the onboarding process.

23. Drivers "[r]eceive regular performance updates and gain access to continually updated training modules." *See* https://partner-help.blacklane.com/en/articles/8420677-what-does-it-mean-to-become-a-blacklane-partner. (last visited Sept. 3, 2024).

24. When driving for Blacklane, Plaintiff and Class Members must "adhere to" Blacklane's numerous "Operational Guidelines" and "standards" to "ensure loyal customers and sustainable business." *See* https://partner-help.blacklane.com/en/articles/8416146-operational-guidelines (last visited Sept. 3, 2024).

25. Plaintiff and the Class Members must also comply with Blacklane's "Quality Standard."

26. For example, Blacklane's Quality Standard bars drivers from taking cash, asking for tips, and soliciting Blacklane customers for further business.

27. Blacklane's Quality Standard also requires drivers to wear a "dark suit, button-up shirt, tie, and polished shoes," perform all accepted rides, and "[i]nspect the vehicle after drop-off to remove any trash, clean spots, etc."

28. Blacklane also "expect[s]" its drivers to perform a 10-point vehicle inspection "before each ride." *See* https://partner-help.blacklane.com/en/articles/9515406-10-point-vehicle-checklist (last visited Sept. 3, 2024).

29. Blacklane uses its unilateral control to set other policies detrimental to Plaintiff and the Class Members.

30. For example, Blacklane offers customers "complimentary wait time"—that is, unpaid time for the driver—of up to "one hour for airport and long-distance train station pickups, and 15 minutes for all other pickups." *See* https://help.blacklane.com/en/articles/2693285-am-i-charged-for-additional-wait-time-if-my-chauffeur-arrives-early (last visited Sept. 3, 2024).

31. Upon information and belief, Blacklane's current policy requires drivers to wait up to 90 minutes after the scheduled pickup time for international flight arrivals, 60 minutes for domestic flight arrivals, and 30 minutes for pickups within Boston.

32. Blacklane also allows customers to modify their booking at any time, including during the trip. *See* https://help.blacklane.com/en/articles/2693231-what-do-i-do-if-i-booked-a-ride-with-the-wrong-pickup-or-dropoff-location (last visited Sept. 3, 2024) ("If you have already

passed the 60 minutes threshold or you are already in the vehicle, please inform the chauffeur about the route change.").

33. Blacklane has also unilaterally established a customer cancellation policy that allows customers "to cancel their ride free of charge up until 1 hour before the scheduled pickup time." *See* https://help.blacklane.com/en/articles/3810157-what-is-the-cancellation-policy-and-how-can-i-cancel-my-ride (last visited Sept. 3, 2024).

34. Although these modifications may result in more work for the driver, Blacklane—and not the driver—decides whether to charge the customer for the additional services.

35. Drivers who refuse to perform services pursuant to the customer's modifications violate Blacklane's rules and are subject to monetary penalties.

36. To ensure that drivers comply with its "Operational Guidelines," "Quality Standard," "Vehicle Checklist," and other policies, Blacklane imposes monetary penalties on drivers for a variety of "incidents"—that is, noncompliance with its policies, rules, and standards. *See* https://partner-help.blacklane.com/en/articles/8416231-incident-types-and-agreed-costs-service-failures (credentials required) (last visited Sept. 3, 2024).

37. Under its current "incident" policy, Blacklane imposes a monetary penalty equal to 100% of the associated fare if the driver requests a cash payment, subcontracts the trip to another driver or vehicle, solicits the guest for further business, discloses private information, engages in "harmful behavior," drives dangerously, or fails to pick up the customer.

38. Requesting a cash payment, subcontracting to another driver, soliciting a customer, and disclosing private information are listed as cause for termination.

39.     Incidents that result in a monetary penalty equal to 50% of the associated fare include poor driving, mechanical issues, arriving more than five minutes late to the pickup, missing a baby seat, and failing to confirm a ride 45 minutes ahead of the pickup.

40.     Arriving less than five minutes late, asking for a tip, having bad manners, initiating a conversation, not following special requests, and using a damaged, dirty, or smelly vehicle result in a monetary penalty equal to 25% of the associated fare.

41.     Blacklane also charges drivers a "handling fee" on "all incidents to account for Blacklane's amount of effort and time required to resolve the issue resulting from the incident." *Id.*

42.     Blacklane also imposes monetary penalties on drivers who fail to cancel a scheduled ride without adequate notice.

43.     Blacklane refers to driver cancellations as "give backs."

44.     Under its current "give back" policy, "the following penalties are applied based on when the ride is returned":

| Time of give-back (before original pickup time) | Penalty (% of original ride price) |
| --- | --- |
| 24 hours or more | 0% |
| 6–24 hours | 20% |
| 2–6 hours | 40% |
| 45 minutes to 2 hours | 60% |

45.     For example, "[i]f the ride pickup time is 9 a.m. on Sunday and the ride was given back at 6 a.m. on Sunday, a 40% penalty would apply." *See* https://partner-help.blacklane.com/en/articles/8592893-what-is-the-give-back-policy (Sept. 3, 2024).

46.     Penalties appear in the driver's next monthly pay statement.

6

47. Besides monetary penalties, Blacklane uses its work assignment process to ensure that Plaintiff and Class Members comply with Blacklane policies and provide high-quality services.

48. Blacklane posts available work assignments to two virtual job boards.

49. One job board lists fixed-pay assignments, while the other functions as a reverse auction.

50. Which job board a driver can access depends on the driver's rating.

51. Customers are prompted to rate their driver using a five-star scale after each ride.

52. Drivers rated at least 4.9 stars over the last 90 days can access the fixed-pay job board.

53. The first driver who accepts the fixed pay assignment on the job board receives the work.

54. For this reason, Plaintiff and other class members must constantly monitor the fixed-pay job board to gain access to economically feasible fares.

55. Drivers with a rating below 4.9 stars must "bid" on work assignments in a reverse auction, with the assignment going to the driver who accepts the lowest pay.

56. Because the reverse auction process drives down the pay amount, drivers strive to maintain a rating of at least 4.9 stars so that they receive fixed-pay work assignments.

57. The number of "offerings" that each driver receives from Blacklane also depends on the driver's total number of "give backs"—that is, cancellations—and "incidents"—that is, violations of Blacklane's operating guidelines.

58. By its own admission, Blacklane designed its work assignment system to "to incentivize better planning and scheduling for our chauffeurs, ultimately leading to improved service delivery and higher guest satisfaction."

59. In other words, Blacklane uses its work assignment system to control the quality of services that Plaintiff and other Class Members provide.

60. Blacklane also sets all prices and controls the entire payment process.

61. For example, despite telling customers that tips, gratuities, or tolls are included, Blacklane does not remit any tips, gratuities, or tolls to the driver.

## CLASS ALLEGATIONS

62. Plaintiff brings this action individually and on behalf of the following class:

> All individuals classified as independent contractors while performing transportation services on behalf of Blacklane in the Commonwealth of Massachusetts during the applicable time period.

63. Plaintiff and the Class Members have uniformly been misclassified as independent contractors.

64. The Class is so numerous that their individual joinder into a single action is impracticable.

65. Although the exact number of Class Members cannot be properly determined without further discovery, the number and identity of the Class Members can easily be ascertained from Blacklane's records.

66. Based on the allegations above, there are questions of law and fact that affect and are common to all Class Members. The central questions of law and fact involved in this action are of a common or general interest.

67. Common legal and factual issues predominate over any questions affecting only individual Class Members.

68. Plaintiff's claims are typical of the claims of other Class Members.

69. Plaintiff performed the same work and seeks the same categories of damages as all Class Members.

70. Plaintiff is committed to vigorously prosecuting this action because Blacklane has caused him to suffer actual losses.

71. Plaintiff has retained qualified counsel, experienced in class action practice.

72. A class action is the superior method available for the fair and efficient adjudication of this controversy. Because the damages suffered by individual Class Members may be relatively small, in comparison with the expense and burden of individual litigation, it is impracticable for members of the Class to seek redress individually for the wrongful conduct herein alleged.

73. Were each member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the court.

74. The prosecution of separate actions would also create the risk of inconsistent rulings, which may be dispositive of the interest of Class Members who are not parties to the adjudication and may substantially impede Class Members' ability to protect their interests and, therefore, would be contrary to the interest of justice and equity.

### COUNT I
**(Business Expenses)**

75. Plaintiff realleges by reference all allegations in all preceding paragraphs.

76. Plaintiff and similarly situated drivers are employees of Blacklane under Massachusetts law. *See* Mass. Gen. Laws ch. 149, § 148B.

77. Blacklane has violated the Massachusetts Wage Act, Mass. Gen. Laws ch. 149 § 148, by causing drivers to bear business expenses necessary to perform their work, including by not limited to gas and car maintenance, insurance, and supplies such as smartphones and data plans.

## COUNT II
### (Unlawful Deductions)

78. Plaintiff realleges by reference all allegations in all preceding paragraphs.

79. Plaintiff and similarly situated drivers are employees of Blacklane under Massachusetts law. *See* Mass. Gen. Laws ch. 149, § 148B.

80. Blacklane has violated Mass. Gen. Laws ch. 149, §§ 148 and 150, and Mass. Gen. Laws ch. 151, §§ 1 *et seq.*, by imposing unlawful deductions and improper setoffs against wages earned by Plaintiff and similarly situated drivers.

## COUNT III
### (Overtime)

81. Plaintiff realleges by reference all allegations in all preceding paragraphs.

82. As employees of Blacklane under Massachusetts law, Plaintiff and similarly situated drivers were entitled to an overtime premium for hours worked over 40 hours per week.

83. Blacklane has violated the Massachusetts overtime statute, Mass. Gen. Laws ch. 151, §§ 1A and 7, by failing to ensure that its drivers were paid an overtime premium for hours work over 40 per week.

84. For example, Plaintiff worked more than 40 hours for Blacklane during the week of September 26, 2023, but he did not receive any overtime premium for this week.

## COUNT IV
### (Minimum Wages)

85. Plaintiff realleges by reference all allegations in all preceding paragraphs.

86. Plaintiff and similarly situated drivers are employees of Blacklane under Massachusetts law. *See* Mass. Gen. Laws ch. 149, § 148B.

87. Blacklane has violated the Massachusetts Minimum Wage Law, Mass. Gen. Laws ch. 151, §§ 1 and 7, by failing to ensure that its drivers are paid at least the full state minimum wage.

88. For example, during the week of April 8, 2024, Plaintiff earned less than the minimum wage for his work as a Blacklane driver.

## COUNT V
### (Declaratory Judgment)

89. Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, Plaintiff requests a declaration that he and all other similarly situated drivers were employees of Blacklane under Massachusetts law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

A. An order under Federal Rule of Civil Procedure 23 certifying the class defined above, appointing Plaintiff as the class representative, and appointing the undersigned attorneys as class counsel;

B. Damages for all unpaid wages and overtime owed to Plaintiff and similarly situated drivers;

C. Damages for all business expenses incurred by Plaintiff and similarly situated drivers;

D. Damages for all unlawful deductions and invalid setoffs imposed on Plaintiff and similarly situated drivers;

E. Statutory trebling of damages and liquidated damages;

F.       Prejudgment interest;

G.      Litigation costs, expenses, and attorneys' fees;

H.      Judgment declaring that Plaintiff and similarly situated drivers were Blacklane's employees under Massachusetts law; and

I.       Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims.

Dated: October 9, 2024

ABDERRAHIM ASSINA,

By his attorneys,

*s/ Shannon Liss-Riordan*
Shannon Liss-Riordan (BBO #640716)
Harold Lichten (BBO #549689)
Jeremy Abay (*pro hac vice* forthcoming)
Matthew Carrieri (BBO #705192)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800
sliss@llrlaw.com
hlichten@llrlaw.com
jabay@llrlaw.com
mcarrieri@llrlaw.com