UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ABDERRAHIM ASSINA,<br>On behalf of himself and all others<br>similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLACKLANE NORTH AMERICA INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 24-12580-LTS |

ORDER ON MOTION TO COMPEL ARBITRATION AND
STAY COURT PROCEEDINGS (DOC. NO. 12)

April 8, 2025

SOROKIN, J.

Abderrahim Assina brings this putative class action against Blacklane North America

Inc., alleging that Blacklane misclassified Assina and others as independent contractors to avoid

paying hourly wages, overtime wages, business expenses, and other benefits in violation of

Massachusetts law.  Presently before the Court is Blacklane's Motion to Compel Arbitration and

Stay Court Proceedings, Doc. No. 12.[1]  For the reasons that follow, that Motion is DENIED

WITHOUT PREJUDICE.

---

[1] Citations to "Doc. No. __" refer to documents appearing on the court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header or to the paragraph numbers used by the document in question.  Some of the parties' submissions consist of both numbered-paragraph declarations and documents without numbered paragraphs in a single filing.  See, e.g., Doc. No. 13-1.  Where that is the case, the Court uses paragraph numbers for the portions so organized and page numbers otherwise.

Blacklane maintains a platform (the "App") through which individual users ("Riders") can seek chauffeur services from local drivers ("Chauffeurs"). Doc. No. 13-1 ¶¶ 4, 11.[2] To offer these services, Blacklane contracts with business entities, which it calls Local Service Providers ("LSPs") and which, in turn, contract with or employ individual Chauffeurs. Id. ¶¶ 5, 9. When a Rider books a trip with a Chauffeur through the App, the Rider pays Blacklane, which pays a fee to the Chauffeur's LSP, which then pays the Chauffeur. Id. ¶ 11. In 2019, Blacklane contracted with Blackstone Car Service, LLC, an LSP for which Assina acted as both a Chauffeur and the principal. Id. ¶¶ 23, 26.

On the present Motion, Blacklane alleges that the parties entered into an agreement to arbitrate that applies to the claims here at issue. In particular, Blacklane says that it updated the terms of use (the "Terms") for the App around March 11, 2024, to include an arbitration provision. Id. at 10–21. In relevant part, this provision states:

> The parties to these Terms mutually consent to the resolution by final and binding arbitration of all claims, causes of action, charges, complaints, disputes or controversies arising out of, related to, or in connection with: . . . your engagement to provide the Services on the Local Service Provider's behalf, including but not limited to any employment or wage claim against the Local Service Provider or Blacklane.

Id. at 11.

According to Blacklane, it sent an email to all U.S.-based Chauffeurs—including to an email address associated with Assina—on March 13, which stated: "We are introducing the following legal terms that govern the use of our Chauffeur app. Please review these terms carefully, as they include important information." Doc. No. 15-1 at 5; Doc. No. 13-1 ¶¶ 28–29.

---

[2] The Court "draw[s] the relevant facts from the operative complaint and the documents submitted . . . in support of the motion to compel arbitration." Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018). In doing so, the Court "must construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 175 (1st Cir. 2021).

The email included a button labeled "Read terms" and a notice that "[i]t will soon be mandatory to accept these terms to continue using the Chauffeur app."  Doc. No. 15-1 at 5.

Beginning on April 8, Blacklane updated the App to require each Chauffeur to agree to the new Terms before continuing to use the App.  Id. ¶ 8.[3]  Blacklane submitted a screenshot of the App showing a pop-up box labelled, "Accept Blacklane's Terms & Review Privacy Notice," with the text, "[b]y tapping 'I agree' below, I have reviewed and agree to the Terms and acknowledge the Privacy Policy."  Id. at 7.  Both "Terms" and "Privacy Policy" appear to be hyperlinked.  Id.  Per Blacklane, a Chauffeur would not be able to use the App until they clicked "I agree."  Id. ¶ 9.  According to two declarations submitted by Blacklane Chief Technology and Product Officer Dirk Daumann, Blacklane's electronic records show that Assina accepted the Terms on April 15.  Doc. No. 13-1 ¶ 30; Doc. No. 15-1 ¶ 10.

For his part, Assina has submitted his own declarations in which he avers that he has no recollection of accepting the Terms and that the screenshot of the App submitted by Blacklane does not depict the App as it appears on his phone.  Doc. No. 14-2 ¶ 7; Doc. No. 18-1 ¶¶ 3, 5.  Assina has also produced an invoice from Blacklane showing that he completed at least one ride in between the App being updated on April 8 and his alleged acceptance of the Terms on April 15.  Doc. No. 14-2 at 3–12.

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  However, a party seeking to compel arbitration pursuant to the FAA bears the

---

[3] According to Blacklane, this process "[w]as not immediate, meaning that not all phones were updated immediately after the new version of the Chauffeurs App was released."  Doc. No. 15-1 ¶ 8.

burden of showing the existence of an agreement to arbitrate.  Cullinane, 893 F.3d at 60.  In

"deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should

apply ordinary state-law principles that govern the formation of contracts."  Combined Energies

v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008) (alterations in original) (quotations omitted).

Under Massachusetts law, a court must make two inquiries to determine whether parties entered

into an enforceable online agreement to arbitrate: (1) "whether the contract terms were

reasonably communicated"; and (2) "whether the record shows that those terms were accepted

and, if so, the manner of acceptance."  Cullinane, 893 F.3d at 61–62 (quoting Ajemian v.

Yahoo!, Inc., 987 N.E.2d 604, 611–13 (Mass. App. Ct. 2013), aff'd, 84 N.E.3d 766 (Mass.

2017)).[4]

On the present record, Blacklane has failed to carry its burden on both inquiries.  First,

Blacklane has not credibly established that it presented the Terms to Assina in the App.  While

Blacklane has submitted a screenshot of the App, Assina has reasonably called into question

whether the screenshot shows the App as he saw it.  Although the language in the pop-up box of

the screenshot is in English, the rest of the App seems to be in German, lending support to

Assina's argument.  Without showing the App as it appeared to Assina when he allegedly

accepted the Terms, Blacklane cannot prove that it reasonably communicated the Terms to him.

Cf. Doe v. Morgan Stanley & Co., LLC, No. 1:24-CV-10391-JEK, 2024 WL 3677615, at *2 n.1

(D. Mass. Aug. 6, 2024) (noting that movant produced several versions of what screen in

question may have looked like depending on device used, and non-movant conceded that she

---

[4] Because the parties assume that Massachusetts law governs this issue, the Court does the same. See Doc. No. 14 at 11; Doc. No. 15 at 4–5.

4

used computer-based application); Good v. Uber Techs., Inc., 234 N.E.3d 262, 269 (Mass. 2024) (analyzing screenshot with no apparent dispute over authenticity).

Second, even assuming arguendo that the Terms were so communicated, Blacklane has not shown that Assina accepted those terms. Blacklane has not presented the actual electronic records showing that Assina clicked "I agree." Instead, all that is before the court is a declaration from Daumann that Blacklane's records show Assina electronically accepted the Terms and a declaration from Assina that he has no recollection of accepting the Terms. Moreover, that Assina completed a ride after the App was updated but before Blacklane says he accepted the Terms supports the inference that Assina was not required to accept the Terms to continue using the App. On this scant record, Blacklane has fallen short of establishing acceptance.

Because the record does not show that Blacklane reasonably communicated the Terms to Assina and that Assina accepted the Terms, Blacklane has failed to establish the existence of an enforceable agreement to arbitrate. As this is a close issue which may be better illuminated by a more developed record, though, the Court will allow limited discovery into the existence of an arbitration agreement between the parties. See Air-Con, 21 F.4th at 175 (remarking that, on a motion to compel arbitration, a district court may allow limited discovery "targeted to the disputed contract-formation questions" (quotations omitted)). Such discovery is especially appropriate in this case because another federal court has already ordered discovery on a similar issue in another case, Singh v. Blacklane North America Inc., 3:24-cv-07129-RFL (N.D. Cal. filed Oct. 11, 2024), which involves similar claims against Blacklane brought by plaintiffs with at least one attorney in common with Assina, a similar motion to compel filed by Blacklane, and the same law firm representing Blacklane. See Doc. No. 19-1 at 2.

5

Therefore, Blacklane's Motion to Compel Arbitration and Stay Court Proceedings, Doc. No. 12, is DENIED WITHOUT PREJUDICE.  The parties shall engage in limited discovery on the issues of: (1) whether Blacklane reasonably communicated the Terms to Assina through the App; and (2) whether Assina accepted the Terms.  Discovery on these issues shall close on May 30, 2025.[5]  Blacklane may then renew its Motion no later than June 24, 2025.  At that point, the parties may incorporate their prior briefing by reference and may submit additional evidence and briefing limited to these two issues.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge

---

[5] The Court selected this date to align with the limited discovery ordered in Singh.  If the parties wish to adjust the schedule in this case, they may file a status report setting forth their joint or separate positions on the matter.